IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BALIVI CHEMICAL CORPORATION, | ) | |
| | ) | Case No. CV-07-353-S-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **DECISION AND ORDER** |
| | ) | |
| JMC VENTILATION REFRIGERATION, | ) | |
| LLC, a Washington Limited Liability | ) | |
| Company, JMC ENTERPRISES, INC., a | ) | |
| Washington Corporation, and JOEL | ) | |
| MICKA, an Individual, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it a motion to disqualify counsel filed by JMC. The Court held an evidentiary hearing on January 24, 2008. For the reasons expressed below, the Court will deny the motion.

## EVIDENTIARY HEARING

The Court has set forth many of the facts in this case in a prior decision and will not repeat them here. The evidence adduced at the hearing confirms most of that factual analysis, changes one significant aspect, and clarifies other aspects.

The one significant change comes in Micka's testimony regarding his continuing contacts with Cataxinos after the trademark was obtained. The Court's

**Memorandum Decision and Order – Page 1**

prior decision discussed Micka's Declaration wherein he stated that in the fall of 2006, he spoke to Cataxinos about "certain issues related to copyright protection . . . [and] he briefly advised me regarding the legal requirements for such protection and we discussed future copyright work on behalf of JMC Ventilation." *See Micka Declaration* at ¶ 19.  In the evidentiary hearing, Micka testified that he now retracts that statement.

In addition to this change, the evidentiary hearing clarified the circumstances surrounding the preparation of the Mauk letter.  It is clear from the testimony that Mauk drafted that letter on his own without any assistance from Cataxinos, who was not even aware it was being prepared by Mauk.  Mauk listed the Trask Britt firm in the letter simply because they had associated in the past and he was "name-dropping" in an attempt to impress JMC.

At the time of this letter – September of 2006 – Cataxinos and his firm were not involved in any action that might be adverse to JMC.  Cataxinos was not aware of 1,4Group's investigation into JMC's possible infringement until late June of 2007.  By that time, Cataxinos had already ended his attorney/client relationship with JMC by sending a termination letter on June 4, 2007, and returning the case files to JMC.

The evidentiary hearing also clarified the circumstances regarding whether

**Memorandum Decision and Order – Page 2**

Cataxinos may have confidential information that he obtained from Micka that could be used in a way adverse to Micka's interests. Even assuming Micka revealed information concerning how he applied DMN and CIPC to Cataxinos, it is clear that Micka's process was already known to the Forsythes. Micka was an applicator for the forerunner companies of 1,4Group from 1997 to 2004. He was trained by John Forsythe in the process for applying DMN and CIPC, and he regularly informed Forsythe on his operational details up until 2004. There is no evidence that Micka shared any information with Cataxinos that he was not already giving to the Forsythes.

## ANALYSIS

All attorneys practicing before this Court "must familiarize themselves with and comply with the Idaho Rules of Professional Conduct of the Idaho State Bar and decisions of any court interpreting such rules." *See Local Rule 83.5.* Pursuant to the Idaho courts' interpretation of those Rules, JMC bears the burden of proving that TraskBritt should be disqualified. *See Weaver v. Millard*, 819 P.2d 110 (Id.App.Ct. 1991).

The Idaho Rules, pertaining to this case, prohibit an attorney from (1) representing a client "if the representation involves a concurrent conflict of interest," *see Rule 1.7(a)*; (2) representing a client against a former client in the

**Memorandum Decision and Order – Page 3**

"same or a substantially related matter," *see Rule 1.9(a)*; and (3) using information related to the former client to the disadvantage of the former client, with some exceptions, *see Rule 1.9(c)*.

The application of these Rules to the facts raises a threshold question: When did Cataxinos cease representing JMC?  The Idaho courts have not adopted a single test for determining whether an attorney-client relationship exists.  They have instead evaluated claims under the two predominant tests adopted in other jurisdictions: (1) The controlling factor in the first test is the client's subjective belief, which must be reasonable under the circumstances; and (2) The controlling factor in the second test requires a contract analysis, finding that no attorney-client relationship exists absent clear assent by both the putative client and attorney. *Warner v. Stewart*, 930 P.2d 1030, 1035 (Id. 1997).

Cataxinos argues that his representation of JMC ended when he obtained the trademark in 2001.  But the written agreement he drafted contemplates a continuing relationship if JMC so requests, and Micka testified that "I asked them [Trask Britt] to be responsible for monitoring our registration."  *See Micka Declaration* at ¶ 13, p. 5.  While this is not determinative, Cataxinos did not advance his cause by failing to send a termination letter (or a final billing) after obtaining the 2001 trademark, and by thereafter contacting Micka twice – and

**Memorandum Decision and Order – Page 4**

billing him twice – on trademark matters.  Cataxinos describes these contacts as reminders rather than advice, but either way, he was continuing his contacts with Micka on the trademark matter, confirming the reasonableness of Micka's belief that Cataxinos continued to represent him.

The Court is not holding here that formal termination is required in every case.  But under these particular facts, the Court cannot hold that the attorney/client relationship between Cataxinos and JMC terminated in 2001 with the issuance of the trademark.  That relationship was not terminated until June 4, 2007, when Cataxinos returned the case files to JMC.

This finding raises the second question in the case: At any time prior to June 4, 2007, was Cataxinos representing a party "directly adverse" to JMC under Rule 1.7(a)?  The Court finds that he was not.

JMC argues that Cataxinos was adverse to JMC on September 11, 2006, as evidenced by the Mauk letter.  However, the Court finds that Cataxinos was not involved at all in the preparation of that letter.  Mauk drafted the letter entirely on his own, without assistance from any attorney at Trask Britt.  He named the Trask Britt firm not because he had associated with them to pursue JMC but instead because he wanted to use their reputation to impress JMC.  It would be unfair to tar Trask Britt and Cataxinos with a conflict of interest because another attorney

**Memorandum Decision and Order – Page 5**

"dropped" their names to gain negotiating leverage.

JMC points out that Cataxinos was copied on that letter, and should have known at that point that his firm's name had been invoked, pulling him into a position adverse to JMC.  *See JMC Supplemental Brief* at pp. 7-8.  However, the Court finds credible Cataxinos' testimony that he did not become aware of JMC's possible infringement until late June of 2007, after he had withdrawn from representing JMC.

Under the Idaho Rules, a concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client."  The Rule's comment section explains that an attorney has a duty not to "act as an *advocate* in one matter *against* a person the lawyer represents in some other matter."  *See comment 6 to Rule 1.7* (emphasis added).  Cataxinos did not violate this Rule.

The Court further finds there is no evidence that Cataxinos is violating Rule 1.9(c).  Even assuming that Cataxinos could use information provided by Micka regarding his application of CIPC and DMN to Micka's disadvantage, Rule 1.9(c) contains an exception for "when the information has become generally known."  This application information was generally known because Micka also provided it to the Forsythes, as discussed above.

Finally, JMC argues that Cataxinos is violating Rule 1.7(a)(2): "Having

received information related to CIPC applications from its now-former client, JMC, which it must maintain as confidential under [Rules] 1.6 and 1.9, Trask Britt cannot be allowed to represent 1,4Group or Balivi now that its clients and former clients are adversaries." *See JMC Supplemental Brief* at p. 8.  However, as discussed above, Micka revealed details about his CIPC applications to the Forsythes on a regular basis for many years.  Micka cannot use information that he voluntarily disseminated to the client of his former attorney to now disqualify his former attorney from representing that client.

For all of these reasons, the Court will deny the motion to disqualify.

## ORDER

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to disqualify (Docket No. 28) is DENIED.

DATED: **February 1, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge