IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BALIVI CHEMICAL CORPORATION, | ) ) ) | Case No. CV-07-353-S-BLW |
| Plaintiff, | ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| JMC VENTILATION REFRIGERATION, LLC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## INTRODUCTION

The Court's staff held a telephone conference with all counsel to address discovery matters. The Court issues this decision to give guidance rather than rule as a matter of law. These issues remain open for resolution by motion in the ordinary course. However, to prompt agreement, and to give guidance, the Court will offer its analysis of some of the discovery issues below.

**1.      Peachtree Documents**

Balivi has requested summaries of key data from JMC such as the number of applications in certain periods, the amount of chemical used in those applications, and their cost. JMC has produced documents in response, but no single document

**Memorandum Decision and Order – Page 1**

contains the summaries requested.  Balivi alleges that it must engage in a lengthy effort to cull out from these documents the data it requested.

Apparently, both Balivi and JMC use a software known as "Peachtree," and so Balivi is aware of the summary reports available from that software.  Balivi seeks certain documents that can be produced by the Peachtree software, such as a Purchase Journal, Sales Journal, and Profit and Loss Report.  The Court's understanding is that JMC is printing out these documents and will produce them to Balivi within a few days.  These documents may not contain the precise summaries Balivi is seeking, but may make it easier for Balivi itself to calculate the summaries.

The Court is perplexed that JMC does not have such basic information readily available; data on applications, chemicals, and costs, would appear to be foundational information crucial to their business operation.  Nevertheless, JMC's counsel represents that they have produced all they have, and that is all that can be required.  Assuming the data is not in a single document, the Court would urge JMC to provide documents that make it as easy as possible to gather the data.

**2.    Past & Present Employees**

When Balivi sought to contact past and present JMC employees without involving JMC's counsel, JMC demanded that all contact be conducted through

**Memorandum Decision and Order – Page 2**

their counsel. Balivi responds that Rule 4.2 of the Idaho Rules of Professional Conduct only prohibits them from contacting managerial employees, and would not prevent them from talking with line employees who actually did the applications.

Rule 4.2 bars an attorney from communicating "about the subject of the representation with a person the lawyer knows to be represented by a another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Comment 5 elaborates that the Rule is intended to mark as off-limits not only a managerial employee who "regularly consult[s] with the organization's lawyer concerning the matter," but also an employee "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability."

The key remaining issue in this case is whether JMC's applications constitute infringement. Arguably, the conduct of a JMC employee who was actually conducting applications could be imputed to JMC for purposes of the infringement analysis. While the Court is not so holding as a matter of law, JMC is at least taking a reasonable position in requiring that all contact with present JMC employees be conducted through JMC's counsel. Obviously, Balivi remains free to notice-up depositions of these employees.

**Memorandum Decision and Order – Page 3**

With regard to past employees, Rule 4.2 states that "consent of the organization is not required . . . ."  Hence, JMC could not require that Balivi's contact with former employees be conducted through JMC's counsel.  Balivi has requested phone numbers for these former employees, and the Court understands that JMC's counsel will work diligently to uncover those numbers and provide them to Balivi's counsel within a few days.

3. **Expert Scheduling**

JMC's rebuttal expert identification deadline is October 31, 2008.  The discovery deadline is October 17, 2008.  All parties agreed to allow depositions of experts to continue after the discovery deadline.

Balivi raised another concern, however, that expert depositions may not get completed by the time it must file its final briefing on the dispositive motions.  To get a jump on the deadline, Balivi requested that JMC notify it of its rebuttal experts now.  JMC refused, asserting that (1) early disclosure could waive work product, if JMC ultimately decided not to call that rebuttal expert, and (2) rebuttal issues would not arise until Balivi identified its experts and so it was impossible now to identify rebuttal experts.

Without making any final ruling, the Court finds JMC's position reasonable.  This creates the dilemma described by Balivi, however, in which experts'

**Memorandum Decision and Order – Page 4**

schedules might delay depositions until after final briefs are due on dispositive motions. The parties discussed stipulating to pushing out the dispositive motion deadline, although nothing was agreed upon. The Court would be agreeable to waive its policy against extending the dispositive motion deadline so long as the new deadline is (1) agreed upon by counsel, and (2) no more than a six week extension.

**4.      Fogger Testing**

Balivi wants to test JMC's fogger without having any JMC personnel or attorneys present. JMC counters that it must have a representative present to prevent trade secrets from being revealed. While the fogger is made by a third party manufacturer, JMC made a modification to the fogger which it considers to be a trade secret. Although JMC might be able to cover up the modification, JMC wants a representative present to ensure that the trade secret is not inadvertently revealed. Balivi resists this on the ground that its testing will reveal work product protected material to the JMC representative.

This issue pits the protection of work product against the protection of trade secrets. An obvious solution is to have a neutral third party on site during the testing to ensure that the trade secret is not revealed. This assumes that the trade secret is subject to being covered up so the testing could occur without it being

**Memorandum Decision and Order – Page 5**

revealed. The Court would urge the parties to agree on (1) on a method of concealing the trade secret, and (2) a neutral third party to observe and ensure that the trade secret was not revealed.

DATED: **September 19, 2008**

_____
B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order – Page 6**